OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY AND THE PREROGATIVE COURT,

NOVEMBER TERM, 1897.

56 375
64 389
56 375
65 771

CELINE M. DUVALE, appellant,

*v.*

CHARLES L. DUVALE, respondent.

[Filed February 28th, 1898.]

1. When the consideration of lands conveyed to a wife is paid by her husband, the presumption is that the transaction is a settlement on the wife; but such presumption may be overcome by proof of facts accompanying the transaction, and showing the intent of the parties to have been that the husband should have an interest therein notwithstanding the conveyance to her.

2. When the proofs show clearly that the intent of the parties is that only a limited interest in the lands should be settled on the wife, the husband holds in equity such estate and interest therein as was not settled on her, and her title is subject to a resulting trust in his favor to that extent.

375

Duvale *v.* Duvale.

3. An agreement by a wife to devise lands to her husband which induces him to pay for them, and have them conveyed to her, and to expend money in their improvement, is an enforceable contract; and when the wife in her lifetime repudiates the agreement and makes other testamentary disposition of such lands, the husband is entitled to the intervention of a court of equity to prevent such violation of the agreement.

On appeal from a decree advised by Vice-Chancellor Reed, whose opinion is reported in *Duvale* v. *Duvale, 9 Dick. Ch. Rep. 581.*

Brief for appellant.

The law is clear. It is settled by *Lister* v. *Lister*, decided first by Chancellor Runyon, whose opinion was adopted by the court of appeals. The case is on all fours with this, and is found reported in *8 Stew. Eq. 49; 10 Stew. Eq. 331.* It that case, deeds had been directed by the husband to be made to the wife, he advancing all purchase-money, and then proceeding, without further agreement, to expend large sums of money in improvements upon the property. He swore, and sought to prove, that these deeds were given in trust for the use of the husband and the family. She denies this assertion. The property purchased, with improvements, exceeded $60,000 in value. The wife had been unfaithful, had been divorced for that cause, had married another man, and was living with him, yet the court decreed that the property having been given to the wife was hers, and dismissed the bill of complaint. The views of the chancellor are very pertinent. See *8 Stew. Eq. 52.* See, also, corroborating, *Persons* v. *Persons, 10 C. E. Gr. 250.* See, also, *Read* v. *Huff, 13 Stew. Eq. 229,* decided in the court of appeals by Mr. Justice Depue. His views are likewise very pertinent to this case. Refer likewise to *Krauth* v. *Theile, 18 Stew. Eq. 407; Linker* v. *Linker, 5 Stew. Eq. 174; Whitley* v. *Ogle, 2 Dick. Ch. Rep. 67.* The doctrine of these cases is, that when a man purchases land and causes it to be conveyed to his wife, the presumption is that it is a settlement upon her. No resulting trust arises from the payment of the money by the husband. The burden of proof is upon him if he would show

that any trust existed. The proof which in such cases shall overcome the presumption of a gift to the wife must be of facts antecedent to, or contemporaneous with, the purchase, or else immediately afterwards, so as to be in fact part of the same transaction, and it must be equally satisfactory and explicit with the proofs required to establish a resulting trust. The language used by the court in *Kraulle* v. *Theile* is apposite. They say complainant testifies under the powerful influence not only of pecuniary interest, but of bitter enmity to the defendant, and after having acquiesced for several years to the daughter's title to the property in question, without intimating that she had any claim upon it. She is not sustained by any documentary proof, and her statements upon other subjects are contradicted so as to cause doubt as to her reliability.

In *Linker* v. *Linker* it is said that where there is conflicting evidence as to a husband's object in making conveyance of lands to his wife, the ordinary presumption that it is intended as a provision or settlement for her benefit is not rebutted.

The present case is distinguishable from those where such trusts as here alleged have been established. The evidence in them has been more explicit and convincing. In *Carr* v. *Demarest, 10 Stew. Eq. 393*, both husband and wife testified to such an agreement as is here set up. In *Newkirk* v. *Place, 2 Dick. Ch. Rep. 477*, letters were produced containing acknowledgments that the daughter held for her father's benefit. In *Lovett* v. *Taylor, 9 Dick. Ch. Rep. 311*, there were several witnesses to the intention of the party, and no contradiction.

The facts in this case are not obscure. The chronology is very important.

(Here follows a discussion of the facts.)

In conclusion of this review of the facts, we say, first, that on the whole testimony, no court can be rationally convinced of the truth of the complainant's allegation that his gift of the land was clogged with any trust. The burden of evidence is upon him, and the court must be satisfied by clear and convincing testimony. *Midmer* v. *Midmer's Executors, 12 C. E. Gr. 548*. Second, we say that the weight of the testimony strongly nega-

tives the allegation of such a trust, and that, on the proofs, that negative has been manifested. Thirdly, we say that whatever occurred between the parties in relation to the cross-wills, was after the conveyance of the land to Mrs. Duvale, and is not to be considered. Fourth, we contend that the relief prayed in relation to those wills is not within the jurisdiction of the court of chancery. No court can compel a party to make a will, nor, if it has been made, prevent the maker from revoking or altering it.

Some legal propositions are pertinent and important.

Where a married woman enters into a contract as a party, by which she agrees to convey land, the agreement cannot, of course, be enforced against her, even when she acts as trustee in making the contract. *Pom. Spec. Perf.* § *459* ; *Avery* v. *Griffin, L. R. 6 Eq. 606 ; Nichols* v. *Jones, L. R. 3 Eq. 696.*

Husband and wife cannot, except in carefully-excepted cases, testify one against the other. *Shoul. H. & W.* § *82* ; *1 Greenl. Evid. 340,* and cases cited.

Mutual consent will not authorize the breach of this rule.

The disability of the husband is as great as that of the wife. *1 Greenl. Evid. 334.*

The rule applies alike to evidence of declarations made by husband and wife for or against one another, and to their testimony in person. *1 Greenl. Evid. 341; Brown* v. *Wood, 121 Mass. 137.*

Such evidence as this, though under objection admitted in this case, was strictly of the nature of confidential communications and was inadmissible.

Husband and wife cannot contract with each other, or sue each other on alleged contracts. Lord Hardwicke, in *Lanney* v. *Athol, 2 A. V. At. R. 448 ; 1 Bl. Com. 442 ; 2 Kent Com. 129.*

See, as to modern rules, *Shoul. H. & W., Part VI., "Transactions Between Husband and Wife."*

These modern rules obtain only where the doctrine of community in property is established by statute. Such is not the case in New Jersey.

In *Lister* v. *Lister,* the parties had been divorced; so the one

could sue the other. In *Osborne* v. *Osborne, 2 Stew. Eq. 385* (a valuable case as to the right and value of oral evidence to set aside a deed), the question as to the right of suit was not raised. Nor was it in *Sing-Bow* v. *Sing-Bow.*

So far as I know, this is the only case in New Jersey where a husband who sued his wife to enforce a contract for a trust was, under objection, allowed to do it.

Is not the statute of frauds conclusive?

A trust as to this property, between parties not husband and wife, could not be enforced unless in writing.

Is there, then, any reason for doing it between husband and wife, and at the prayer of one against the other?

Declarations forming part of *res gestœ* are indeed admitted, if proved by competent evidence. That evades the statute.

But the question still remains, Can an alleged trust be enforced against a wife at the prayer of a husband?

And can a woman be compelled by the court of chancery to make a will in favor of her husband, or be restrained by its injunction from making any other?

And can a decree be made against heirs unborn, or devisees before devise, or parties not known or beyond the probability of being known?

The court of chancery has large powers, but do they extend thus far?

The views, reasoning and decree of the vice-chancellor demand attention.

The allegations of the bill are—*first*, that the deeds to the wife were made, and, of course, received by her, in trust for her husband. The second prayer asks that she may be directed to convey the same to him ; *second*, it is alleged that the deeds were made and received by her under and with the condition that she would execute a will devising this property to him, so that if he outlived her it would be his—and prayer was made that she be compelled specifically to perform this agreement.

The vice-chancellor finds that the lands were conveyed to her under and pursuant to an agreement that the same should be held by her in trust for herself and her husband, during their

joint lives and for the survivor of them, his or her heirs and assigns, and that the same were held subject to an agreement by her to devise said lands by her will to him, his heirs and assigns.

And so finding, he decrees that she holds her title to said lands subject to the trust above mentioned, as well as subject to her agreement to devise the same to the complainant. And that in case she dies first her heirs and devisees shall forthwith convey to him, and that an injunction issue enjoining her from devising the lands to anyone else during his life.

The prayers of the bill are not granted. Mrs. Duvale is *not* declared to hold the premises in trust for her husband, nor directed to convey the same to him. She is declared to hold them under an agreement that they be held by her in trust for herself and him during their joint lives, and for the survivor of them, his or her heirs and assigns, of which trust there is no particle of evidence. She is not declared to hold them in trust for her husband, nor directed to convey the same to him.

She is not decreed specifically to perform her alleged agreement to execute a will devising the lands to her husband. It *is* decreed that she be enjoined while her husband is living from devising the lands to any other person than to him.

So much as to her. There is the additional decree that, in case she dies first, her heirs and devisees shall convey to him.

The grounds of this certainly peculiar decree are stated on pages 162–165.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

*Mr. Cortlandt Parker* and *Mr. R. Wayne Parker,* for the appellant.

*Mr. Charles L. Corbin,* for the respondent.

The opinion of the court was delivered by

MAGIE, C. J.

This appeal is from a decree that appellant shall hold certain lands, the legal title to which is in her, in trust for herself and husband during their joint lives, and for the survivor of them,

his or her heirs or assigns, and subject to an agreement on her part to devise said lands by her will to respondent, his heirs and assigns. It further enjoins her, while respondent is living, from making a will devising said lands to any other person than him, and directs that if she shall die before him her heirs and devisees shall forthwith convey said lands to him.

The parties are husband and wife.

Appellant's appeal is from the whole decree.

The opinion of Vice-Chancellor Reed, who advised the decree, contains so full a statement of the pleadings and proofs that it will serve no useful purpose to repeat more than seems essential to make intelligible the conclusions we have reached.

The prayer of the bill of respondent was in the alternative. He asked relief by a decree that the lands in question were held by appellant in trust for him and directing a conveyance thereof to him, and also relief by a decree compelling appellant to perform an agreement to execute a last will and testament devising said lands to him, with such incidental restraints and directions as would compel such performance.

The decree does not direct a conveyance of the lands to respondent, and he has not appealed.

The lands in question were conveyed to appellant by three deeds. The first deed was made June 12th, 1890. Respondent held a contract for the tract thereby conveyed, but satisfied his contract by requesting the owners to make the conveyance to which he was entitled to his wife. He paid the whole purchase-price, and thereafter expended large amounts of his own money in erecting a dwelling-house and making improvements on that tract. The second deed was made September 2d, 1891, and the husband furnished the purchase-money. Thereafter he spent much of his money in the erection of stables and other conveniences for use in connection with the residence on the lot first conveyed. The third deed was made July 29th, 1892, and the consideration paid for it was money which had been awarded to appellant for a part of the lot first conveyed to her upon a condemnation by a railroad company.

When lands are purchased by one person, who pays the pur-

chase-price, and they are conveyed to another person who is a stranger, a trust in the lands is implied or results in favor of him who has paid the consideration.  But where a husband purchases and pays for lands and takes the title in the name of his wife, such a trust does not necessarily result.  On the contrary, a presumption arises that the husband has caused the conveyance to be made to his wife by way of a settlement upon her.  Such a presumption may be rebutted and overcome by proof of facts accompanying the transaction which show that the intention of the parties was that the lands should not be held by the wife as settled upon her, but in trust for the husband.  Her subsequent acknowledgment and recognition by words or acts may be given in evidence.  If from all the evidence it is clear that the presumption of settlement is rebutted, a trust will then result which can be enforced.  This well-settled doctrine is illustrated in many cases in our courts.  *Peer* v. *Peer, 3 Stock. 432; Persons* v. *Persons, 10 C. E. Gr. 250; Lister* v. *Lister, 8 Stew. Eq. 49; S. C., 10 Stew. Eq. 331; Read* v. *Huff, 13 Stew. Eq. 229.*

The appeal, therefore, first presents the question whether the proofs in the case clearly show that the presumption that these lands which were paid for by the husband were conveyed to the wife as a settlement in her favor has been overcome, and that the parties to the transaction had other intentions.

It has been already stated that the decree does not direct a conveyance to the husband under the prayer of his bill asking that relief.  Although he has not appealed from the decree, it is proper to say that the conclusion in the court below, that he was not entitled to that relief, was entirely correct.  It is true that respondent testified that, before the purchase of the first lot, his wife and he had conversations which expressed the intentions of both that the title which she was about to acquire should be conveyed to him whenever he desired.

If the transaction when finally completed was with the intention thus expressed, I think a trust in favor of the husband for the whole interest in the land must have resulted.  But appellant denied that such conversations took place between them, and there is no such corroboration of the husband as to justify a

Duvale *v.* Duvale.

determination that it is clearly made out that such was and continued to be the intent of the parties when that purchase was completed by conveyance to her.

But it is obvious from the proofs that if the previous intentions of the parties had been such as would be indicated by the conversations detailed by the husband, those intentions were changed before the completion of the transaction. The testimony of Cannon, the New York lawyer, and of respondent, and the proof of subsequent admissions made by appellant, render it entirely clear that although the land was to be conveyed to her she was to devise it to him by her last will and testament.

From this view of the evidence it results, in my judgment, that the settlement made thereby upon appellant was not of the whole estate in the land, but of a limited interest therein. It can probably be best expressed as being a settlement of a life estate in the land with a remainder in fee, contingent upon her surviving her husband. Therefore, there remained unsettled upon her the estate in the land which would result in case the fee was not cast upon her by the happening of the contingency contemplated. If she died before her husband the intention was that her heirs should have no interest whatever in the lands.

Since the husband paid the purchase-price, and the evidence shows with clearness that the settlement intended was limited, does a trust result with regard to so much of the estate as was not settled?

The implication of a trust in such cases does not necessarily depend upon its affecting the whole interest in the lands in question. Thus it was held in this court that the payment of part of the purchase-money, if that part be shown with certainty, will create a resulting trust to the extent of that payment. *Cutler* v. *Tuttle, 4 C. E. Gr. 549.* So, in that class of resulting trusts which, Mr. Lewin says, arise when, upon a conveyance, devise or bequest, a trust is declared of part of the estate, and nothing is said of the residue, it is settled that the undisposed-of equitable interest of the settlor will result to him or his representative. *1 Lew. Trusts *146; 1 Perry Trusts § 150.* Lord Hardwicke declared that the reason why the court of

chancery had allowed a trust by operation of law to arise in that class of cases was that the party by declaring part of the trust to be for another and by saying nothing as to the other part of it, shows his intention to be that the other was to have only one part of the trust, and consequently he himself ought to have the benefit of the other part. *Lloyd* v. *Spillet, Barn. 384.*

In my judgment these principles are applicable to the case before us, and appellant, when she took the conveyance of that land with the intention that a limited interest therein should be settled upon her, took and holds the title to all interest therein not settled upon her in trust for respondent.

This is the trust, as I understand it, the vice-chancellor found established by the proofs.

What has been said so far relates to the circumstances surrounding the transaction whereby the first conveyance was made to her, and the effect on the legal title acquired by the wife.

The vice-chancellor finds in the proofs other ground to support respondent's claim. His conclusion is that the undertaking of appellant to devise the land to respondent induced him to make the purchase and vest the title in her. The proofs show that respondent commenced to make improvements on the tract first purchased, and finding that appellant was reluctant to make the will which it had been arranged she was to make, notified her that unless she did so he would withdraw his workmen and stop the work. Delay still occurring he did withdraw the workmen, and appellant then went and executed the will which had been drawn at the same time, or shortly after the acquisition of the first title. Thereby she devised her lands to respondent; then he resumed work on the improvement and spent thereon a large sum of money.

That will continued in existence unrevoked until after the acquisition by her of the two other tracts, and after respondent's improvements on the tract secondly conveyed.

Upon these facts it is plain that it would be inequitable to permit appellant to disregard her agreement to devise the land to respondent, which agreement had induced respondent to pur-

chase the tract first conveyed to her and to expend large sums of money upon it.

Such an agreement is an enforceable contract, and a court of equity may intervene to require its enforcement. *Van Duyne* v. *Vreeland, 1 Beas. 142; Johnson* v. *Hubbell, 2 Stock. 332; Parsell* v. *Stryker, 41 N. Y. 480; Van Duyne* v. *Vreeland, 3 Stock. 370; Pflagar* v. *Platz, 16 Stew. Eq. 440; Davison* v. *Davison, 2 Beas. 246; Young* v. *Young, 18 Stew. Eq. 27.*

In this case the contract is between husband and wife, and therefore only enforceable in equity, and as the wife has repudiated it in her lifetime, and made other testamentary disposition of the lands, the husband is justified in asking the remedial intervention of equity to prevent the violation of the agreement.

All of the court deem the trust and contract applicable to the tract first acquired and enforceable against it. A majority of the court think that the contract is also applicable and enforceable as to the tract secondly acquired. As originally made perhaps that contract might not apply to the second tract, but when recognized and continued by the unrevoked will, it operated to induce respondent to expend his money on the purchase of that tract, to join it to the first tract, and to erect the stables, tank and other conveniences for the use of the residence on the first tract.

A majority also think that the tract thirdly acquired is impressed with the trust, and subject to the agreement as having been acquired with money raised out of the first tract which was in that situation.

The result is that respondent was properly held to have been entitled to relief. It remains to consider whether the relief which was accorded him was appropriate.

But neither the trust nor the agreement of which we find evidence justifies any restriction upon the appellant in the lands during her life. The effect of both is, that so long as she lives she has the estate therein which married women now hold by statute—that is, the same estate that she would have if she were a *feme sole.* Should respondent die before her, her estate in the lands is discharged from the trust and from the performance of

the agreement. Should she die before him, the equitable estate in the lands vests in him, and he would be entitled to have them conveyed to him by the owners of the legal estate if she has not devised them to him.

The decree before us goes farther, and declares that the lands are held in trust for herself and her husband during their joint lives, and for the survivor of them, his or her heirs or assigns. In respect to the provision as to the trust during their joint lives, it exceeds the trust which was intended and the agreement which was made, and it should be added it is not supported by the vice-chancellor's opinion. This requires a reversal of the decree, and its modification so as to declare that appellant holds the lands subject to a trust in favor of the respondent, whereby, if she should die before him without devising the lands to him, an equitable estate in the lands in fee-simple would vest in him, which would entitle him to have the legal estate conveyed to him by her heirs or devisees. In other respects the decree is approved.

As this modifies the decree in a part to which no attention was directed in the argument, and which seems comparatively unimportant, no costs will be allowed upon the reversal.

DEPUE, J. (dissenting).

The decree in this case is, first, " that the said lands were conveyed to and held by the said Celine M. Duvale under and pursuant to an agreement that the same should be held by her in trust for herself and her husband during their joint lives, and for the survivor of them, his or her heirs or assigns;" and, second, " that the same were held subject to an agreement made by the defendant, Celine M. Duvale, to devise the said lands by her will to the complainant, his heirs and assigns." The first part of this decree adjudges that the said tracts of land are held upon a joint estate for the husband and wife during their joint lives, with a limitation over in fee to the survivor. It is by no means clear from the opinion of the vice-chancellor that he reaches this conclusion upon the theory of a resulting trust or in virtue of some agreement between the husband and wife with

Duvale v. Duvale.

respect to the title conveyed to her. This part of the decree cannot be sustained on the ground of a resulting trust. A resulting trust arising from the payment of the consideration by the one party—the conveyance being made to another—arises at the instant the deed is taken, and the legal title being vested in the grantee, the equitable estate becomes, *ipso facto*, vested immediately in the *cestui que trust*. The consideration for this conveyance was paid wholly by the husband. If the doctrine of a resulting trust applies to this case, the husband would have taken an estate in fee immediately upon the execution and delivery of the deed to the wife. No estate jointly in the *cestui que trust* and the grantee could arise except from the joint payment by husband and wife, each paying some aliquot part of the consideration. *Cutler* v. *Tuttle, 4 C. E. Gr. 549; Wheeler* v. *Kirtland, 8 C. E. Gr. 13, 22; Thalman* v. *Canon, 9 C. E. Gr. 127; Shroser* v. *Isaacs, 1 Stew. Eq. 320; Krauth* v. *Thiele, 18 Stew. Eq. 407, 409; Midmer* v. *Midmer's Executors, 11 C. E. Gr. 299, 304; Jamison* v. *Miller, 12 C. E. Gr. 587, 591.*

Nor would a resulting trust arise in case of a conveyance to the wife on the mere payment of the consideration by the husband. Where a husband pays the consideration of the purchase of lands and has the conveyance made to his wife, the presumption is that a gift or settlement was intended, and a resulting trust will not arise in his favor from such payment; and the proof which in such cases shall overcome the presumption of gift to the wife must be of facts antecedent to, or contemporaneous with, the purchase, or else immediately afterwards, so as to be in fact part of the same transaction, and the proof, to have that effect, must be equally satisfactory and explicit with the proof required to establish a resulting trust. *Read* v. *Huff, 13 Stew. Eq. 230.* The case relied on to overcome the presumption that this conveyance was by way of a gift to the wife consists in evidence of an arrangement between the husband and wife that she should devise the property to him by her last will. Such an arrangement would leave in the wife an estate for her life as her own property separate and apart from her husband. I agree with the chief-justice that this part of the decree cannot be sustained.

Duvale v. Duvale.

With respect to the other part of the decree, I think there was evidence to justify the vice-chancellor in finding, as a matter of fact, that the transaction between the husband and wife with respect to the first purchase was that she was to take title to that tract on an agreement that she would devise that tract to her husband by her last will. So far I concur in the opinion of the chief-justice. But I am unable to find in the evidence any warrant for applying that agreement to the subsequent purchases. The vice-chancellor, in his opinion, deals with the agreement between husband and wife as made expressly with respect to the first lot. He draws the other property within the scope of that agreement, on the theory that the agreement covered all accessions to the original lot. On this theory he deduces an implication against the presumption of a gift in such transactions between husband and wife which is not justified. Each one of these purchases must rest upon its own circumstances, and the inference that there was an actual agreement between husband and wife that subsequent conveyances, which are presumed to have been gifts, should have been made and taken upon a similar express trust, is unwarranted. The court is dealing with title to lands held under the usual muniments of title; and I agree with and adopt the remarks of Vice-Chancellor Van Fleet, in *Midmer* v. *Midmer's Executors, supra*, that "nothing short of certain, definite, reliable and convincing proof will justify the court in divesting one of title to lands evidenced by a regular deed, and putting it in another." That rule of law is founded upon principles which are necessary to give certainty and security to legal titles. In my judgment it is applicable to this case. There does not appear in the evidence, nor is the fact so found by the vice-chancellor, that, with respect to the last two purchases, there was any agreement whatever between the husband and wife with respect to the terms and conditions on which title for those parcels should be taken in her name.

I shall vote to affirm that part of the decree declaring that the defendant holds title to the lands described as the first purchase, subject to an agreement to devise the same to her husband, and to reverse the residue of the decree.

As to concurrence in the opinion as to the first tract:

*Yea*—THE CHIEF-JUSTICE, DEPUE, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON—11.

*Nay*—None.

As to concurrence in the opinion as to the second tract:

*Yea*—THE CHIEF-JUSTICE, GARRISON, LIPPINCOTT, LUDLOW, BOGERT, NIXON—6.

*Nay*—DEPUE, GUMMERE, VAN SYCKEL, ADAMS, HENDRICKSON—5.

As to concurrence in the opinion as to the third tract:

*Yea*—THE CHIEF-JUSTICE, GARRISON, LIPPINCOTT, LUDLOW, BOGERT, NIXON—6.

*Nay*—DEPUE, GUMMERE, VAN SYCKEL, ADAMS, HENDRICKSON—5.

*For reversal of decree*—THE CHIEF-JUSTICE, DEPUE, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON—11.

*For affirmance*—None.