41   409
43    10
44   567

## In the matter of the alleged lunacy of MARY S. PERRINE, of Middlesex county.

An inquisition which found that a deaf mute sixty-five years old, who has been such since she was two or three years old, who is ignorant, and can neither read nor write, nor communicate her ideas to others by signs or otherwise, and who cannot be made to understand an ordinary business transaction, is "of sound mind and capable of controlling her property by her own selection of a proper person to act for her," set aside.

On motion to set aside inquisition.

*Mr. A. S. Appelget*, for the motion.

THE CHANCELLOR.

The inquisition in this case is signed by nineteen of the twenty-four jurors. They find that the alleged lunatic "is of sound mind, and is capable of controlling her property by her own selection of a proper person to act for her." The other five certify that she is " not of sufficient understanding to enable her to manage her property." She is about sixty-five years old and has never been married. The commissioners have made a report concerning her condition. They say that she is not an idiot or lunatic in the popular sense of the words; that she has been a deaf mute ever since she was two or three years old; that she is ignorant, having never been taught any language, whether spoken or of signs; that she can neither read nor write, and cannot express to others her understanding, if any she have, of any business transaction; that she cannot be made to comprehend a business transaction, except perhaps a very ordinary one, involving no more money than a dollar or two; that she has learned to fetch and carry, and to do common, every-day housework—that is, she can sweep, wash, cook an ordinary meal &c.; that it is possible by rude gestures to communicate to her a desire that she should do such work; that she has never managed her property nor any part thereof, and that the acting trustee of her estate has never informed her of the amount, character or income of her property, and that it is doubtful whether she can be so informed; that she has always been cared for by her near relatives with whom she has lived—by her mother for about fifty years, and until her mother's death; after her mother's death by her unmarried sister so long as that sister lived, and since that sister's death by her married sister, with whom she now lives.

Application is made to set aside the inquisition on the ground that the finding is contrary to the evidence.

Lord Hale says that a man deaf and dumb from his birth is, in presumption of law, an idiot; and the rather because he has no possibility to understand what is forbidden by law to be done, or under what penalties. He also says that if it can appear that

the man has the use of understanding—which, he adds, many of that condition discover by signs to a very great measure—then he may be tried and suffer judgment and execution, though great caution is to be used therein. *Hale P. C. 34.* In *Brower* v. *Fisher, 4 Johns. Ch. 441,* Chancellor Kent said, speaking of such persons: "Perhaps, after all, the presumption in the first instance is that every such person is incompetent. It is reasonable presumption in order to insure protection and prevent fraud, and is founded on the notorious fact that the want of hearing and speech exceedingly cramps the powers and limits the range of the mind. The failure of the organs requisite for general intercourse and communion with mankind oppresses the understanding. *Affigat humo divinæ particulam auræ.* A special examination to repel the inference of mental imbecility seems always to have been required." A person born deaf and dumb, but not blind, is not an idiot. *Coll. Lun. 4 § 5 ; Shelf. Lun. 4 ; Brower* v. *Fisher, ubi sup.* But in order to warrant this court in interfering in behalf of a person to protect him against the consequences of his own mental incompetency, it is not necessary that he should be an idiot or a lunatic—it is enough if from any cause, whether by age, disease, affliction or intemperance, he has become incapable of managing his own affairs. *2 Mad. Ch. 732 ; 1 Black. Com. 304; Ridgeway* v. *Darwin, 8 Ves. 65 ; Conover's Case, 1 Stew. Eq. 330 ; Lawrence's Case, Id. 331.* In *Gibson* v. *Jeyes, 6 Ves. 267, 273,* Lord Eldon says that upon a commission in the nature of a *writ de lunatico inquirendo* it is not necessary to establish lunacy, but it is sufficient that the party is incapable of managing his own affairs. It was so held by Chancellor Kent in the *Matter of Barker, 2 Johns. Ch. 232,* where the person who was the subject of the inquiry had become incapacitated by old age. Whether persons born deaf and dumb are to be treated judicially as persons mentally incompetent to manage their affairs must depend upon the evidence they are able to give of the possession of capacity. In *Dickenson* v. *Blisset, 1 Dick. 268,* a person who was born deaf and dumb, and who had attained to her majority, applied for possession of her real estate and for an assignment to her of her personal

property. Lord Chancellor Hardwicke, having put questions to her in writing, to which she gave sensible answers in writing, thereupon granted the application. In *Brower* v. *Fisher, 4 Johns. Ch. 441,* above cited, a commission was issued to inquire as to the mental competency of such a person. In the case in hand the jury found that Miss Perrine was of sound mind and capable of controlling her property by her own selection of a proper person to act for her. But if the proof was, as the commissioners certify, that she is incapable of understanding the business or even of receiving any communication upon the subject, and therefore does not understand and cannot be made to understand what the necessities of the management of her estate demand, or what an agent is, or what his duties are ; or, in other words, if the proof was, as they certify, that she does not understand and cannot be made to understand any matters of business except it may be such as are of the most simple character—if she has no comprehension of business matters—it is obvious that she is not capable of managing her affairs, and the inquisition cannot be sustained. The jury does not find that she is herself competent to manage her business, but that she is capable of controlling it by an agent of her own selection. But if she cannot be made to understand what the business is, how can she select an agent to manage it ?

The inquisition will be set aside.