In re application for appointment of a guardian for HUGH McLAUGHLIN, an alleged lunatic.

[Submitted February 5th, 1917. Decided February 21st, 1917.]

The act of March 3d, 1915 (*P. L. 1915 ch. 28 p. 57*), in so far as it gives authority to the chancellor in a summary manner to inquire into and determine the question of the lunacy or insanity of a person, without the intervention of a jury, and to appoint a guardian, violates article 1, paragraph 7 of the constitution, and is null and void.

On petition, &c.

*Mr. George L. Record,* for the petitioner.

*Messrs. Treacy & Milton,* for Hugh McLaughlin.

GRIFFIN, V. C.

This application is made by the wife of the alleged lunatic, setting forth that on July 2d, 1915, he was committed to the New Jersey State Hospital for the Insane; that no inquisition of lunacy has been issued to determine the question of his lunacy, and no guardian has been appointed by the orphans court. The prayer is that she may be appointed his guardian in accordance with the statute, and for other relief.

On filing the petition an order to show cause was granted. On its return the alleged lunatic appeared and objected to the jurisdiction of the chancellor on the ground that the proceeding was in violation of article 1, paragraph 7 of the constitution of this state which went into effect September 2d, 1844, which provides that the right of trial by jury shall remain inviolate.

At common law it was the practice to inquire whether a man was an idiot or not by the writ *de idiota inquirendo,* in which proceeding there was the trial by jury. The method of proving a man *non compos* was quite the same. *1 Bl. Com. 303; De Hart* v. *Condit, 51 N. J. Eq. 611; Hughes* v. *Jones, 116 N. Y. 67; 22 N. E. Rep. 446.*

By the act of November 21st, 1794 (*Pat. L. 1703–1799 p. 125*), it was provided that "the chancellor for the time being should have the care and provide for the safekeeping of all lunatics and of their lands and tenements, goods and chattels," and also to provide for the maintenance of the lunatic and his household.

This act is silent on the method of determining the lunacy; but, as already shown, it was determined by a jury at the common law.

. On March 1st, 1804 (*Bloomf. L. 1800–1811 p. 117*), a supplement to the last-mentioned act was passed, providing "that all cases of idiocy or lunacy shall be determined by an inquest on a commission of idiocy or lunacy issued by the chancellor, and

the proceedings thereon shall be conducted in the manner heretofore practiced."

A revision of the act respecting idiots and lunatics was passed February 28th, 1820. *Elm. Dig. 1838 p. 237*. By its first section it re-enacted the last-mentioned section with slight changes (one being that the inquest shall issue out of the court of chancery), and, as new legislation, provided that the chancellor should, in cases of idiocy or lunacy found, cause to be transmitted to the orphans court of the county where the idiot or lunatic resided a certified copy of the proceedings, and such court, on filing such transcript, was required to appoint a guardian.

Section 1 of the Revision of 1820, in so far as the matter under consideration is affected, was continued in substantially the same form in the Revision approved April 16th, 1846 (*Nix. Dig. 1709–1855 p. 440*), Revision approved March 27th, 1874 (*Rev. 1877 p. 601*), and may be found in *2 Comp. Stat. p. 2781 § 1*.

The question, therefore, arises, Is the right which the lunatic had before the adoption of the constitution to have the question of his sanity determined by the verdict of a jury preserved by the constitutional provision above referred to?

In *De Hart* v. *Condit, supra*, and *Lindsley's Case, 46 N. J. Eq. 358*, it was urged that the summoning of a jury of twelve men instead of twenty-four was a violation of the constitution. Chancellor McGill, in this court, and Mr. Justice Dixon, in the court of errors and appeals, both held that the act of 1887 (*P. L. 1887 p. 48*) was not unconstitutional because it provided that the sheriff, on inquests in lunacy, was authorized to summon twelve instead of twenty-four jurors, pointing out that at common law a jury of twelve men was sufficient. In both these cases it was not considered necessary to decide whether an inquest in lunacy is such a trial by jury as the constitution contemplates. I am not aware of any case in this state where the question has been directly raised or decided.

This question, however, was passed upon by the court of appeals of the State of New York in the well-considered case of *Sporza* v. *German Savings Bank, 192 N. Y. 8; 84 N. E. Rep.*

*406;* and the court unanimously held, under constitutional provisions similar to ours, that the right to trial by jury in lunacy cases was saved. It was careful, however, to distinguish between cases where proceedings were brought for the appointment of a committee, where the finding by a jury of incompetency is a condition precedent, and proceedings instituted under the police power for the temporary restraint of insane persons prior to the appointment of any committee.

Counsel for the petitioner cites the case, recently decided by the chancellor, *In re Martin, 98 Atl. Rep. 510,* in justification of the right to proceed under her petition. That case is quite unlike the present. There it was sought by the petition to procure the release of the inchoate right of dower of a wife who was insane. The application was made under section 28 of the Dower act (*Comp. Stat. p. 2052*), as amended by the *P. L. 1915 p. 396.* In that case the question of the constitutionality of the supplement to the act concerning idiots and lunatics passed in 1915 (*P. L. 1915 p. 57*) was neither presented nor considered. It had no application to the case *sub judice.* The law giving the chancellor the right to proceed, as he did in the *Martin Case,* was applied by Grey, M. C. C. (afterwards vice-chancellor). *In re Conveyance of the Inchoate Right of Dower of Mary Booskirk, an Alleged Lunatic, 24 N. J. L. J. 591.* In that case the proceedings were had under the Dower act, passed March 27th, 1878, which appears in the *Gen. Stat. 1895 p. 1281* (at § 28); and the prayer of the petition was granted. This latter act was also considered by Vice-Chancellor Green (*In re Mary Ann Alexander, 53 N. J. Eq. 96*), and the relief was denied because the inchoate right of dower of the lunatic had attached prior to the passage of the act of 1878.

It is, therefore, quite apparent that the case *In re Martin* does not control this case. Here the petitioner seeks, under the law of 1915, entitled "A supplement to an act entitled 'An act concerning idiots and lunatics'" (*P. L. 1915 p. 57*), to have the chancellor inquire into and determine the question of the lunacy or insanity of Hugh McLaughlin, "without the intervention of an inquisition or commission of lunacy by a jury," and to appoint a guardian. If she succeeds in this, then the alleged lu-

natic may be restrained of his liberty, and all of his property taken out of his control, and be prevented from making contracts and attending to his business and affairs, without the right of trial by a jury of his peers.

It seems quite plain that when the framers of the constitution inserted the paragraph providing that the right of trial by jury should remain inviolate they were fully advised of the common law history of the method of determining the question of lunacy, and of the acts of March 1st, 1804, and February 28th, 1820, above referred to, and intended to perpetuate the system, which forbade the finding of lunacy unless by the verdict of a jury.

I am, therefore, of opinion that the act of March 3d, 1915 (P. L. 1915 p. 57), in so far as jurisdiction is given to the chancellor to adjudge a person a lunatic without the intervention of a jury, and to appoint a guardian accordingly, is unconstitutional, null and void.

The application will therefore be denied.

In closing, I may say that I regarded this case as so important and far-reaching, affecting, as it does, a whole line of cases, that I conferred with the chancellor about it, and am authorized by him to say that he concurs in the result reached and the reasons upon which it is predicated.